Slip Op. 12-90

UNITED STATES COURT OF INTERNATIONAL TRADE

BAROQUE TIMBER INDUSTRIES
(ZHONGSHAN) COMPANY, LIMITED,
*et. al*,

     Plaintiffs,

       v.

UNITED STATES,

     Defendant,

      and

ZHEJIANG LAYO WOOD INDUSTRY
COMPANY, LIMITED, *et al.*,

     Defendant-Intervenors.

Before: Donald C. Pogue,
       Chief Judge

Consol. Court No. 12-00007[1]

OPINION AND ORDER

[ordering further briefing with regard to Defendant's Motion to
Dismiss]

Dated: June 27, 2012

    <u>Jeffrey S. Levin</u>, Levin Trade Law, P.C., of Bethesda,
MD and <u>John B. Totaro, Jr.</u>, Neville Peterson, LLP, of Washington,
DC, for Consolidated Plaintiff Coalition for American Hardwood
Parity.

    <u>Alexander V. Sverdlov</u>, Commercial Litigation Branch,
Civil Division, United States Department of Justice, of
Washington, DC, for Defendant.  With him on the briefs were
<u>Stuart F. Delery</u>, Acting Assistant Attorney General, <u>Jeanne E.
Davidson</u>, Director, <u>Claudia Burke</u>, Assistant Director.  Of
counsel on the briefs was <u>Shana Hofstetter</u>, Attorney, Office of
the Chief Counsel for Import Administration, U.S. Department of
Commerce, of Washington, DC.

---

[1] This action was consolidated with Court Nos. 11-00452, 12-
00013, and 12-00020. Order at 1, May 31, 2012, ECF No. 37.

Francis J. Sailer, Mark E. Pardo, Andrew T. Schutz, and Kovita Mohan, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, of Washington, DC, for Defendant-Intervenors Baroque Timber Indus. (Zhongshan) Co., Ltd.; Riverside Plywood Corp.; Samling Elegant Living Trading (Labuan) Ltd.; Samling Global USA, Inc.; Samling Riverside Co., Ltd.; and Suzhou Times Flooring Co., Ltd.

Gregory S. Menegaz, J. Kevin Horgan, and John J. Kenkel, deKieffer & Horgan, PLLC, of Washington, DC, for Defendant-Intervenors Zhejiang Layo Wood Industry Co., Ltd.; Changzhou Hawd Flooring Co., Ltd.; Dunhua City Jisen Wood Indus. Co., Ltd.; Dunhua City Dexin Wood Indus. Co., Ltd.; Dalian Huilong Wooden Products Co., Ltd.; Kunshan Yingyi-Nature Wood Indus. Co., Ltd.; and Karly Wood Products Ltd.

Jeffrey S. Neeley, Michael S. Holton, and Stephen W. Brophy, Barnes, Richardson & Colburn, of Washington, DC, for Defendant-Intervenor Zhejiang Yuhua Timber Co. Ltd.

Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer, Susan L. Brooks, Sarah M. Wyss, Keith F. Huffman, Mowry & Grimson, PLLC, of Washington, DC, for Defendant-Intervenors Fine Furniture (Shanghai) Ltd.; Great Wood (Tonghua) Ltd.; and Fine Furniture Plantation (Shishou) Ltd.

Kristen S. Smith and Mark R. Ludwikowski, Sandler, Travis & Rosenberg, P.A., of Washington, DC, for Defendant-Intervenors Lumber Liquidators Services, LLC; Armstrong Wood Products (Kunshan) Co., Ltd.; and Home Legend, LLC.

Daniel L. Porter, William H. Barringer, Matthew P. McCullough, and Ross Bidlingmaier, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for Defendant-Intervenor Bureau of Fair Trade for Imports & Exports, Ministry of Commerce, People's Republic of China.

**Pogue, Chief Judge**: This is a consolidated action

seeking review of determinations made by the Department of

Commerce ("the Department" or "Commerce") in the antidumping duty

investigation of multilayered wood flooring from the People's

Republic of China ("China").[2]  Currently before the court is

Defendant's Motion to Dismiss the Complaint filed by Consolidated

Plaintiff the Coalition for American Hardwood Parity ("CAHP").

     In its Motion to Dismiss, ECF No. 52 (docketed under

Ct. No. 11-00452), Defendant alleges that CAHP's Complaint fails

to comply with jurisdictional requirements established by Section

516A(a)(2) of the Tariff Act of 1930, as amended, 19 U.S.C.

§ 1516a(a)(2),[3] because CAHP filed its summons in advance of

Commerce's publication, in the Federal Register, of the

antidumping order.

     As explained below, the court agrees that CAHP's filing

fails to comply with the statutory provisions governing the time

for filing.  However, in light of recent decisions by the Supreme

Court and the Court of Appeals for the Federal Circuit, this

court is not yet persuaded that such failure to timely file

requires dismissal for lack of jurisdiction.  Because the parties

did not fully brief the question of whether the relevant statutes

---

     [2] <u>Multilayered Wood Flooring from the People's Republic of
China</u>, 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011) (final
determination of sales at less than fair value) ("<u>Final
Determination</u>") and accompanying Issues & Decision Memorandum, A-
570-970, POI Apr. 1, 2010 - Sept. 30, 2010 (Oct. 11, 2011) Admin.
R. Pt. 2 Pub. Doc. 31, 32, <u>available at</u>
http://ia.ita.doc.gov/frn/summary/PRC/2011-26932-1.pdf ("<u>I & D
Mem.</u>") (adopted in <u>Final Determination</u>, 76 Fed. Reg. at 64,318).

     [3] All subsequent citations to the Tariff Act of 1930 will be
to Title 19 of the U.S. Code, 2006 edition, unless otherwise
noted.

are jurisdictional requisites – as opposed to claim processing
rules subject to equitable tolling – the court will reserve
judgment and order further briefing on this issue.


### Background

This case arises from Commerce's initiation, on
November 18, 2010, of an antidumping duty investigation of
multilayered wood flooring from China. Multilayered Wood Flooring
from the People's Republic of China, 75 Fed. Reg. 70,714 (Dep't
Commerce Nov. 18, 2010) (initiation of antidumping duty
investigation) ("Initiation Notice").  Following the
investigation, on October 18, 2011, Commerce published its Final
Determination, finding that the subject merchandise was being
sold at less than fair value in the United States, i.e., dumped.
Final Determination, 76 Fed. Reg. at 64,323-24.  In the Final
Determination, Commerce calculated a zero margin for one
mandatory respondent, Zhejiang Yuhua Timber Co., Ltd. ("Yuhua").
Id. at 64,323.  On December 8, 2011, Commerce published its
antidumping duty order. Multilayered Wood Flooring from the
People's Republic of China, 76 Fed. Reg. 76,690 (Dep't Commerce
Dec. 8, 2011) (amended final determination of sales at less than
fair value and antidumping duty order) ("Antidumping Duty
Order").  Yuhua, having received a zero rate in the Final
Determination, was excluded from the order.  Id.

Following publication of the <u>Final Determination</u>, but prior to publication of the <u>Antidumping Duty Order</u>, CAHP filed a summons giving notice that it would challenge various aspects of Commerce's <u>Final Determination</u>. Summons, Nov. 17, 2011, ECF No. 1 (docketed under Ct. No. 11-00452).  Among the issues identified for challenge in the Summons were "certain aspects of the affirmative final determination of sales at less than normal value including the exclusion of one producer/exporter[, Yuhua] . . . ." Summons at 1.

**Discussion**

I.   <u>CAHP's Summons Was Untimely Filed</u>

The statute states specific timing requirements that a prospective plaintiff must follow when seeking review of Commerce's determinations in an antidumping duty investigation. The Motion to Dismiss turns on the proper interpretation of these statutory provisions, found at 19 U.S.C. § 1516a(a)(2), which are as follows:

> (A) In general
>     Within thirty days after —
>         (i)  the date of publication in the Federal
>              Register of —
>              (I)  notice of any determination
>                   described in clause (ii) . . . of
>                   subparagraph (B), [or]
>              (II) an antidumping or countervailing
>                   duty order based upon any
>                   determination described in clause
>                   (i) of subparagraph (B) . . .
>     an interested party who is a party to the

proceeding in connection with which the matter
arises may commence an action in the United States
Court of International Trade by filing a summons,
and within thirty days thereafter a complaint
. . . .

(B) Reviewable determinations

The determinations which may be contested under
subparagraph (A) are as follows:

(i)   Final affirmative determinations by
[Commerce] and by the Commission under
section 1671d or 1673d of this title,
including any negative part of such a
determination (other than a part
referred to in clause (ii)).

(ii)  A final negative determination by
[Commerce] or the Commission under
section 1671d or 1673d of this title,
including, at the option of the
appellant, any part of a final
affirmative determination which
specifically excludes any company or
product.

Commerce interprets this statute to have, depending on

the nature of the complaint, two potential filing dates for a

challenge to the exclusion of a company.  If the sole challenge

plaintiff brings addresses the exclusion of a company, then,

according to Commerce, plaintiff may file within thirty days of

publication of the affirmative determination, pursuant to

§ 1516a(a)(2)(A)(i)(I). Mot. to Dismiss at 6.  If, however,

plaintiff challenges both the exclusion of a company and other

aspects of an affirmative determination, then Commerce interprets

the statute to require that the summons be filed within thirty

days of publication of the order, pursuant to

§ 1516a(a)(2)(A)(i)(II). Mot. to Dismiss at 6-7.

CAHP, in contrast, interprets § 1516a(a)(2)(B)(ii) to

require a plaintiff to challenge the exclusion of a company by filing within thirty days of publication of the affirmative determination. Pl.'s Opposition to Def.'s Mot to Dismiss at 6-9, ECF No. 62 (docketed under Ct. No. 11-00452) ("Pl.'s Resp. Br."). Therefore, under CAHP's interpretation, any action that includes the exclusion of a company must be filed within thirty days of publication of the affirmative determination.

       On first read, the language of the statute may seem ambiguous.  On the one hand, § 1516a(a)(2)(B)(i) appears to preclude challenges to exclusion of companies from its purview. By defining challenges to an affirmative determination to include all challenges to any negative part of the affirmative determination "other than a [negative part of an affirmative determination] referred to in clause (ii)," § 1516a(a)(2)(B)(i), challenges to the exclusion of a company, appear relegated to § 1516a(a)(2)(B)(ii).  On the other hand, the language in § 1516a(a)(2)(B)(ii) does not unequivocally support such a reading.  Rather, § 1516a(a)(2)(B)(ii) permits filing a challenge to the exclusion of a company within thirty days of the publication of the affirmative determination "at the option of the appellant."  If filing on the § 1516a(a)(2)(A)(i)(I) timeline (within thirty days of publication of the affirmative determination) is "at the option of the appellant," then the appellant must have other filing options, i.e., there must be at

least one other timeline for filing a challenge to the exclusion of a company.

Commerce argues that this ambiguity has been resolved by the Court of Appeals' opinion in <u>Bethlehem Steel Corp. v. United States</u>, 742 F.2d 1405 (Fed. Cir. 1984). In <u>Bethlehem Steel</u>, the plaintiff challenged Commerce's negative finding that an export rebate program was not a countervailable subsidy – and this challenge was in the context of an otherwise affirmative countervailing duty determination, i.e., plaintiff filed a challenge to a negative part of an affirmative determination. <u>Id.</u> at 1407-08. The plaintiff's summons was filed within thirty days of publication of the countervailing duty order but beyond thirty days from the publication of the affirmative determination. <u>Id.</u> at 1408. This Court held that the challenged finding was a negative determination, and therefore, the complaint was untimely pursuant to § 1516a(a)(2)(A)(i) and § 1516a(a)(2)(B)(ii) because it was filed more than thirty days after the publication of the final determination. <u>Id.</u> The Court of Appeals reversed, holding that the challenged finding was only a negative part or aspect of an affirmative determination, and, because it is only the whole determination that is appealable, any challenge to a negative part or aspect of an affirmative determination is subject to the time limits for challenges to affirmative determinations. <u>Id.</u> at 1410-11.

Contrary to Commerce's assertion, <u>Bethlehem Steel</u> does not resolve the issue because the Court of Appeals was reviewing an earlier version of 19 U.S.C. § 1516a(a)(2)(B).  When the Court of Appeals rendered its decision in <u>Bethlehem Steel</u>, the relevant provision of the statute read as follows:

> (B) Reviewable determinations
>     The determinations which may be contested under subparagraph (A) are as follows:
>         (i)  Final affirmative determinations by the Secretary and by the Commission under section 1303 of this title, or by [Commerce] and by the Commission under section 1671d or 1673d of this title.
>         (ii) A final negative determination by the Secretary, the administering authority, or the Commission under section 1303, 1671d, or 1673d of this title.

19 U.S.C. § 1516a(a)(2)(B) (1982).  The Court of Appeals' holding in <u>Bethlehem Steel</u> fit well with the structure of the statute then in force.  As the statute was cleanly divided between affirmative and negative determinations, the Court of Appeals held that it was the nature of the determination as a whole that governed which timing requirements applied.

However, amendments to § 1516a(a)(2)(B) in the Trade and Tariff Act of 1984, Pub. L. No. 98-573, § 623, 98 Stat. 2948, 3040,[4] inserted the language establishing the unique character of challenges to the exclusion of a company.  Thus, while the Court

---

[4] The Trade and Tariff Act of 1984 became law on October 30, 1984, two months after the decision in <u>Bethlehem Steel</u> was issued. Trade and Tariff Act of 1984, 98 Stat. at 2948.

of Appeals' holding in <u>Bethlehem Steel</u> — that the character of
the challenged determination as a whole decides which timing
requirements apply — remains good law, it does not resolve the
question of how challenges to the exclusion of a company are to
be characterized.  Rather, the provision for challenging the
exclusion of a company may elude the clear division of
determinations into the affirmative and negative categories
recognized in <u>Bethlehem Steel</u>.  Instead of easily resolving into
one of the two <u>Bethlehem Steel</u> categories, the determination to
exclude a company is capable of being either a negative part of
an affirmative determination or a negative determination.  How it
is characterized is, pursuant to the statute, at the option of
the appellant.  Thus, a plaintiff challenging the determination
may either bring the challenge as challenge to a negative
determination, filing pursuant to the timing requirements of
§ 1516a(a)(2)(A)(i)(I), or as a challenge to a negative part of
an affirmative determination, filing pursuant to the timing
requirements of § 1516a(a)(2)(A)(i)(II).

       This is consistent with a reading of the text that
gives effect to all parts of the statute. <u>See</u> <u>Duncan v. Walker</u>,
533 U.S. 167, 174 (2001) ("[A] statute ought, upon the whole, to
be so construed that, if it can be prevented, no clause,
sentence, or word shall be superfluous, void, or insignificant."
(quoting <u>Wash. Market Co. v. Hoffman</u>, 101 U.S. 112, 115–16 (1879)

(internal quotation marks omitted)); <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 133 (2000) ("A court must . . . interpret the statutes as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." (citations omitted) (internal quotation marks omitted)).

CAHP reads the parenthetical in § 1516a(a)(2)(B)(i) as an exception that excludes "a part referred to in clause (ii)" from the universe of negative parts of affirmative determinations. Therefore, in CAHP's view the exclusion of a company, which is referred to in § 1516a(a)(2)(B)(ii), is categorically excluded from § 1516a(a)(2)(B)(i), and a challenge to such a determination must be filed pursuant to § 1516a(a)(2)(A)(i)(I). But this reading of the statute ignores the language in § 1516a(a)(2)(B)(ii) that permits such a filing "at the option of the appellant." Thus, an interpretation of the statute that gives effect to all its parts must read the parenthetical of § 1516a(a)(2)(B)(i) together with § 1516a(a)(2)(B)(ii) to permit the appellant to characterize the exclusion of a company as either a negative part of an affirmative determination or as a negative determination and to file accordingly.[5]

The legislative history of the Trade and Tariff Act of

---

[5] An appellant's choice in this matter is not without limits, as is discussed below in Part II.

1984 further supports the interpretation that an appellant has

the option to characterize a challenge to the exclusion of a

company as either a negative part of an affirmative determination

or as a negative determination.  The Conference Report for the

Trade and Tariff Act of 1984 states that the bill

> [c]larifies when negative portions of affirmative
> determinations may be reviewed: any part of a final
> affirmative determination by the administering
> authority which specifically excludes any company or
> product may, at the option of the appellant, be treated
> as a final negative determination and may be subject to
> appeal within 30 days of publication; other negative
> aspects of an affirmative determination would be
> appealable within 30 days after publication of a final
> order, and if an appellant so chooses, appeal of those
> portions of an affirmative finding which exclude a
> product or a company may also be appealed within 30
> days of publication of a final order, instead of within
> 30 days of the determination.

H.R. Rep. No. 98-1156, at 179 (1984) (Conf. Rep.), <u>reprinted in</u>

1984 U.S.C.C.A.N. 5220, 5296.  Thus, according to the Conference

Report, the amendments to § 1516a(a)(2)(B) were intended to give

the appellant flexibility to challenge the exclusion of a company

either as a negative determination pursuant to the timing

requirements of § 1516a(a)(2)(A)(i)(I) or as a negative part of

an affirmative determination pursuant to § 1516a(a)(2)(A)(i)(II).

This is further supported by the House Report.  In addition to

stating the reasoning that appears in the Conference Report, the

House Report explains that "[t]he purpose of clarifying when

negative portions of an affirmative determination may be reviewed

is to permit appeals of determinations which exclude entire

companies or products on the timetable most acceptable to the appealing party." H.R. Rep. No. 98-725, at 47 (1984), <u>reprinted in</u> 1984 U.S.C.C.A.N. 5127, 5174.

It follows that CAHP's interpretation is incorrect, and, as a result, its summons was untimely filed.  This is because CAHP also seeks to challenge other aspects of Commerce's affirmative determination; such a challenge must be filed within the thirty day period following the publication of the order. Importantly, CAHP incorrectly believed that it was required to file its challenge to the exclusion of Yuhua within thirty days of the affirmative determination — before the order was issued — or lose the opportunity to bring that challenge.  On the contrary, however, the "at the option of the appellant" language in § 1516a(a)(2)(B)(ii) would have permitted CAHP to file that aspect of the challenge under the timing rules of § 1516a(a)(2)(B)(i) and § 1516a(a)(2)(A)(i)(II).  But no such flexibility exists for the remainder of CAHP's Complaint. <u>See Horner v. Andrzjewski</u>, 811 F.2d 571, 575 (Fed. Cir. 1987) ("[A]s a general rule of statutory construction, the expression of one exception indicates that no other exceptions apply."). Therefore, all of the challenges brought by CAHP, excepting the challenge to Yuhua's exclusion, are untimely pursuant to § 1516a(a)(2)(B)(i) and § 1516a(a)(2)(A)(i)(II), as well as the Court of Appeals' holding in <u>Bethlehem Steel</u>.  CAHP cannot

bootstrap these untimely challenges alongside its challenge to

the exclusion of Yuhua because that challenge could have been

timely filed within thirty days after publication of the order

along with all other challenges to the affirmative determination.

        Correctly read, § 1516a(a)(2) permits the filing of a

challenge to an affirmative determination within thirty days of

the order.  It permits the filing of a challenge to a negative

determination within thirty days of the final determination.  And

it permits a challenge to the exclusion of a company from the

order to be filed, at the option of the complaining party, either

with a challenge to an affirmative determination or as a

challenge to a negative determination.   As explained below,

however, the statute does not permit piecemeal litigation;

therefore, CAHP's summons was untimely filed.

II.  <u>The Challenge to the Exclusion of Yuhua is Not Severable</u>
     <u>from the Remainder of the Complaint</u>

        Determining the proper interpretation of

§ 1516a(a)(2)(B) does not fully resolve the Motion to Dismiss.

In its Reply Brief, Commerce suggests that the complaint may be

severed, arguing that "the Court should dismiss all parts of

[CAHP's] complaint that do not specifically relate to Yuhua."

Def.'s Reply in Supp. of Its Mot. to Dismiss at 4, ECF No. 38

("Def.'s Reply Br.").  Commerce is correct that, in light of the

foregoing analysis, CAHP properly filed the summons challenging

the exclusion of Yuhua within thirty days of publication of the

determination.  However, because CAHP also untimely challenged

other aspects of the affirmative determination prior to

publication of the Antidumping Duty Order, the court must

determine whether the challenge to the exclusion of Yuhua can be

severed from the remaining counts of the Complaint or if the

Complaint must be dismissed in full.

        Because severing the Complaint would create the

possibility of piecemeal litigation, such severance is not

consistent with the statute.  In the House Report pertaining to

the Trade and Tariff Act of 1984, the Ways and Means Committee

stated that

> the Committee is aware of the decision of the CIT in
> Bethlehem Steel Corp. v. United States (Slip Op. 83-
> 97),[6] in which the court refused to permit an appeal
> of certain negative findings (with respect to certain
> products or companies) that were part of an overall
> affirmative determination in accordance with the
> timetable for appeal of affirmative determinations.
> The court recognized that its ruling might lead to
> "undesirable piecemeal" litigation, but said that the
> corrections must be made by "legislative fiat." The
> purpose of the Committee's change is to permit an
> election by appellants of when to appeal such
> determinations and thereby to prevent piecemeal
> litigation.

H.R. Rep. No. 98-725, at 47, 1984 U.S.C.C.A.N. at 5175.  To read

the statute as permitting severability in this case would be to

reintroduce the possibility of piecemeal litigation under the

guise of the appellant's option when that option was intended to

---

[6] Bethlehem Steel Corp. v. United States, 6 CIT 164, 571 F.
Supp. 1265 (1983), rev'd, 742 F.2d 1405 (Fed. Cir. 1984).

correct the very problem of piecemeal litigation.  Given the
Committee's clear rejection of piecemeal litigation in the House
Report, it makes more sense to read the statute as permitting the
appellant to choose between challenging the exclusion of a
company as a negative determination, if this is the only
challenge appellant is making, or as a negative part of an
affirmative determination, if the appellant is challenging other
aspects of the affirmative determination.  Otherwise, the
appellant could choose to challenge the exclusion of a company
within thirty days of the publication of the affirmative
determination and then file a subsequent suit within thirty days
of the publication of the order challenging other aspects of the
affirmative determination.  Not only would this create piecemeal
litigation, but it runs afoul of the Court of Appeals' statement
in Bethlehem Steel that "under our reading of the statute
Congress did not normally contemplate such a proliferation (and
perhaps duplication) of appeals." Bethlehem Steel, 742 F.2d at
1411.  While the statute has changed since the Court of Appeals
made that statement, it is not necessary to read the statute as
creating multiple opportunities for appeal of the same
determination in order to read the statute coherently.

          Nor does the Court of Appeals' suggestion in Bethlehem
Steel that severability might be an option in limited cases
support severability in this case.  In Bethlehem Steel, the Court

of Appeals noted in dicta that

> we leave open the question whether there may possibly
> be occasions on which a negative subsidy finding can be
> severed from affirmative subsidy findings respecting
> the same product, and then judicially challenged on a
> separate "interlocutory" basis.  We do decide, however,
> that if such an earlier appeal is ever permissible, it
> could be taken only on the ground that Congress gave
> for specifically providing interlocutory appeals in the
> Trade Agreements Act of 1979 . . . .

Id. at 1411.  However, the Trade and Tariff Act of 1984 struck

the interlocutory appeal provisions from § 1516a.  Compare 19

U.S.C. § 1516a(a)(1) (1982), with 19 U.S.C. § 1516a(a)(1) (2006);

see also H.R. Rep. No. 98-1156, at 178, 1984 U.S.C.C.A.N. at 5295

("Eliminates all interlocutory judicial reviews by the U.S. Court

of International Trade during the course of CVD and AD

investigations.").  Thus, the basis upon which the Court of

Appeals considered severability a possibility was subsequently

stricken from the statute.

        Because permitting severability in this case would

endorse the possibility of piecemeal legislation, which is both

undesirable and contrary to the statutory provision, the court

finds that severability is not an option.[7]

--------

        [7] Should the court find that the timing requirements of
§ 1516a(a)(2) are jurisdictional requisites, see infra Part III,
CAHP may seek a voluntary dismissal of the untimely portion of
its complaint pursuant to USCIT R. 41(a)(2).

III. <u>Further Briefing Is Necessary on the Issues of Jurisdiction</u>
     <u>and Equitable Tolling</u>

        In prior opinions both the Court of Appeals and this
Court have treated the timing requirements of § 1516a(a)(2) as
conditions of the government's waiver of sovereign immunity and,
therefore, as jurisdictional requisites. See <u>NEC Corp. v. United</u>
<u>States</u>, 806 F.2d 247, 248-49 (Fed. Cir. 1986); <u>Georgetown Steel</u>
<u>Corp. v. United States</u>, 801 F.2d 1308, 1312 (Fed. Cir. 1986);
<u>Advanced Tech. & Materials Co. v. United States</u>, 33 CIT __, Slip
Op. 09-115, at *4-5 (Oct. 15, 2009); <u>Allegheny Ludlum Steel Corp.</u>
<u>v. United States</u>, 7 CIT 56, 61 (1984); <u>British Steel Corp. v.</u>
<u>United States</u>, 6 CIT 200, 202-04, 573 F. Supp. 1145, 1147-49
(1983). Furthermore, the Court of Appeals has interpreted these
timing requirements strictly, thereby precluding equitable
tolling, by this Court, of these provisions. See <u>NEC Corp.</u>, 806
F.2d at 249; <u>Georgetown Steel</u>, 801 F.2d at 1312.

        However, intervening case law from both the Supreme
Court and the Court of Appeals has called these holdings into
question. See <u>Ocean Duke Corp. v. United States</u>, 35 CIT __, 781
F. Supp. 2d 1374, 1379 n.4 (2011) (noting that "[a] recent dearth
of clarity in the holdings of relevant Supreme Court and Federal
Circuit precedents" prevented the court from assuming a statute
of limitations was jurisdictional). In a recent line of cases,
the Supreme Court has begun to question the strict,
jurisdictional construal of timing requirements. See <u>Henderson ex</u>

rel. Henderson v. Shinseki, 131 S. Ct. 1197 (2011); Reed
Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010);  Bowles v.
Russell, 551 U.S. 205 (2007); Arbaugh v. Y & H Corp., 546 U.S.
500 (2006).  Furthermore, in a recent opinion, the Court of
Appeals held that the 28 U.S.C. § 2636(d) bar to an untimely
filed challenge to a trade adjustment assistance determination
was subject to equitable tolling.  Former Emps. of Sonoco v.Chao,
372 F.3d 1291, 1298 (Fed. Cir. 2004).  This holding calls into
question whether the 28 U.S.C. § 2636(c) bar to challenges filed
out of time pursuant to 19 U.S.C. § 1516a(a)(2) could also be
equitably tolled.

     In light of these recent developments, the continued
viability of the prior opinions from the Court of Appeals and
this Court – holding the § 1516a(a)(2) timing requirements to be
strict jurisdictional requisites – may be in question.  Because
the parties did not address these issues in their initial
briefs,[8] the court will order a second round of briefing.


### Conclusion

     The court finds that CAHP's summons should have been
filed within thirty days following the publication in the Federal

---

     [8] The court acknowledges that Commerce argued for the
jurisdictional nature of the § 1516a(a)(2) timing requirements in
its Motion to Dismiss.  However, because Commerce did not address
the recent developments in the law, the court is not yet
persuaded by Commerce's position.

Register of the <u>Antidumping Duty Order</u>.  Because it was filed

prior to publication of the <u>Antidumping Duty Order</u>, the summons

was untimely.  However because questions remain regarding the

jurisdictional nature of the timing requirements found at 19

U.S.C. § 1516a(a)(2) and the possibility of equitable tolling,

and because the parties did not address these issues in their

prior briefs, the court orders additional briefing to address

these issues.  In particular, the court directs that the parties

address the following questions:

       1.   Are the timing requirements of 19 U.S.C.

§ 1516a(a)(2) jurisdictional requisites or claim

processing rules when considered in light of the

Supreme Court's decisions in <u>Henderson</u>, *et al.*,

and any other relevant law?

       2.   Are the timing requirements of 19 U.S.C.

§ 1516a(a)(2) subject to equitable tolling in

light of the Court of Appeals' decision regarding

28 U.S.C. § 2636(d) in <u>Former Emps. of Sonoco</u> or

any other relevant law?  Does the statutory

structure of 19 U.S.C. § 1516a in relation to 28

U.S.C. § 2636(c) differ sufficiently to

distinguish it from 19 U.S.C. §§ 2273, 2341 & 2371

as they relate to 28 U.S.C. § 2636(d)?

       3.   Assuming, *arguendo*, that <u>Former Emps. of Sonoco</u>

supports the possibility of equitable tolling in

this case, do equitable grounds exist for the

court to permit CAHP's untimely filed summons and

complaint?

All parties will have until July 12, 2012 to file

initial briefs on these issues.  Parties shall then have until

July 20, 2012 to file a response brief.  Initial briefs shall be

limited to fifteen pages.  Response briefs shall be limited to

ten pages.

It is SO ORDERED.


                                    /s/ Donald C. Pogue
                              Donald C. Pogue, Chief Judge


Dated: June 27, 2012
       New York, New York