Slip Op. 12 -119

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────┐
│ BAROQUE TIMBER INDUSTRIES            │
│ (ZHONGSHAN) COMPANY, LIMITED,        │
│ et. al,                              │
│                                      │
│         Plaintiffs,                  │
│                                      │
│              v.                      │
│                                      │
│ UNITED STATES,                       │
│                                      │
│         Defendant,                   │
│                                      │
│            and                       │
│                                      │
│ ZHEJIANG LAYO WOOD INDUSTRY          │
│ COMPANY, LIMITED, et al.,            │
│                                      │
│         Defendant-Intervenors.       │
└─────────────────────────────────────┘
```

Before: Donald C. Pogue,
        Chief Judge

Consol. Court No. 12-00007[1]

OPINION AND ORDER

[granting Defendant's Motion to Dismiss for lack of subject-
matter jurisdiction]

Dated: September 19, 2012

Jeffrey S. Levin, Levin Trade Law, P.C., of Bethesda,
MD, and John B. Totaro, Jr., Neville Peterson, LLP, of
Washington, DC, for Consolidated Plaintiff Coalition for American
Hardwood Parity.

Alexander V. Sverdlov, Trial Attorney, Commercial
Litigation Branch, Civil Division, United States Department of
Justice, of Washington, DC, for Defendant.  With him on the
briefs were Stuart F. Delery, Acting Assistant Attorney General,
Jeanne E. Davidson, Director, Claudia Burke, Assistant Director.
Of counsel on the briefs was Shana Hofstetter, Attorney, Office
of the Chief Counsel for Import Administration, U.S. Department
of Commerce, of Washington, DC.

---

[1] This action was consolidated with Court Nos. 11-00452, 12-
00013, and 12-00020. Order at 1, May 31, 2012, ECF No. 37.

Francis J. Sailer, Mark E. Pardo, Andrew T. Schutz, Kavita Mohan, and John M. Foote, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, for Defendant-Intervenors Baroque Timber Industries (Zhongshan) Co., Ltd.; Riverside Plywood Corp.; Samling Elegant Living Trading (Labuan) Ltd.; Samling Global USA, Inc.; Samling Riverside Co., Ltd.; and Suzhou Times Flooring Co., Ltd.

Gregory S. Menegaz, J. Kevin Horgan, and John J. Kenkel, deKieffer & Horgan, PLLC, Washington, DC, for Defendant-Intervenors Zhejiang Layo Wood Industry Co., Ltd.; Changzou Hawd Flooring Co., Ltd.; Dunhua City Jisen Wood Industry Co., Ltd.; Dunhua City Dexin Wood Industry Co., Ltd.; Dalian Huilong Wooden Products Co., Ltd.; Kunshan Yingyi-Nature Wood Industry Co., Ltd.; and Karly Wood Product Ltd.

Jeffrey S. Neeley, Michael S. Holton, and Stephen W. Brophy, Barnes, Richardson & Colburn, Washington, DC, for Defendant-Intervenor Zhejiang Yuhua Timber Co., Ltd.

Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer, Susan L. Brooks, Sarah M. Wyss, Keith F. Huffman, Mowry & Grimson, PLLC, of Washington, DC, for Defendant-Intervenor Fine Furniture (Shanghai) Ltd.; Great Wood (Tonghua) Ltd.; and Fine Furniture Plantation (Shishou) Ltd.

Kristen S. Smith and Mark R. Ludwikowski, Sandler, Travis & Rosenberg PA, of Washington, DC, for Defendant-Intervenors Lumber Liquidators Services, LLC; Armstrong Wood Products (Kunshan) Co., Ltd.; and Home Legend, LLC.

**Pogue, Chief Judge:** This is a consolidated action seeking review of determinations made by the Department of Commerce ("the Department" or "Commerce") in the antidumping duty investigation of multilayered wood flooring from the People's Republic of China ("China").[2]  Currently before the court is

---

[2] Multilayered Wood Flooring from the People's Republic of China, 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011) (final determination of sales at less than fair value) ("Final Determination") and accompanying Issues & Decision Memorandum, A-570-970, POI Apr. 1, 2010 – Sept. 30, 2010 (Oct. 11, 2011) Admin.
(footnote continued)

Consol. Ct. No. 12-00007                              Page 3

Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of

Jurisdiction, ECF No. 52 (docketed under Ct. No. 11-00452)

("Motion to Dismiss").

         In the Motion to Dismiss, Defendant alleges that

Plaintiff Coalition for American Hardwood Parity ("CAHP")

Complaint failed to comply with jurisdictional timing

requirements established by § 516A(a)(2) of the Tariff Act of

1930, as amended, 19 U.S.C. § 1516a(a)(2),[3] because CAHP filed

its Summons, ECF No. 1 (docketed under Ct. No. 11-00452), in

advance of Commerce's publication in the Federal Register, of the

antidumping duty order.  In Baroque Timber Industries (Zhongshan)

Co. v. United States, 36 CIT __, Slip Op. 12-90 (June 27, 2012)

("Baroque Timber I"), the court held that CAHP's Summons was

untimely filed pursuant to 19 U.S.C. § 1516a(a)(2).  However, the

court reserved decision on whether the untimely filing required

dismissal of the Complaint on jurisdictional grounds and

requested further briefing to determine whether the timing

requirements in § 1516a(a)(2) are jurisdictional and, if not,

whether they are subject to equitable tolling. Baroque Timber I,

---

        [2](footnote continued)
R. Pt. 2 Pub. Doc. 31, 32, available at
http://ia.ita.doc.gov/frn/summary/PRC/2011-26932-1.pdf ("I & D
Mem.") (adopted in Final Determination, 76 Fed. Reg. at 64,318).

        [3] All subsequent citations to the Tariff Act of 1930 will be
to Title 19 of the U.S. Code, 2006 edition, unless otherwise
noted.

Consol. Ct. No. 12-00007                                    Page 4

36 CIT at __, Slip Op. 12-90 at *19-21.

       Having considered the additional briefing submitted by

the parties, the court concludes that recent Supreme Court

precedent has cast doubt on the jurisdictional nature of

§ 1516a(a)(2)'s timing requirements; however, because the Court

of Appeals for the Federal Circuit has historically treated those

timing requirements as jurisdictional requisites, the court is

obligated to follow circuit precedent unless it is reversed.

Therefore, CAHP's Complaint will be dismissed for lack of

jurisdiction.


BACKGROUND[4]

       In <u>Baroque Timber I</u>, the court recognized that 19

U.S.C. § 1516a(a)(2) contains two potential time lines for a

party to challenge the exclusion of a company from an antidumping

duty order: (1) as a negative part of an affirmative

determination, pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II)

(requiring filing within thirty days of publication of the

antidumping duty order), or (2) as a negative determination,

pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) (requiring filing

within thirty days of publication of the final determination).

<u>Baroque Timber I</u>, 36 CIT at __, Slip Op. 12-90 at *10.  We held,

---

    [4] Familiarity with the court's prior opinion is presumed,
and only interim developments not included in the prior opinion
are provided here by way of background.

however, that a challenge to the exclusion of a company must be filed as a negative part of an affirmative determination, i.e., within thirty days after publication of the antidumping duty order, if filed alongside other challenges to an affirmative determination. Id. at *13-14.  Because CAHP challenged both the exclusion of Zhejiang Yuhua Timber Co., Ltd. ("Yuhua") and other aspects of the affirmative determination, its Summons, filed prior to publication of the antidumping duty order, was untimely. Id.  However, having reserved decision regarding the jurisdictional nature of § 1516a(a)(2) and the possibility that the filing deadline is subject to equitable tolling, the court directed the parties to submit further briefing addressing the reserved issues. Id. at *18-19.  We now turn to these issues.

## DISCUSSION

### I.  Jurisdiction

In Kontrick v. Ryan, 540 U.S. 443 (2004), the Supreme Court noted that "[c]ourts, including this Court, it is true, have been less than meticulous . . . ; they have more than occasionally used the term 'jurisdictional' to describe emphatic time prescriptions in rules of court.  'Jurisdiction,' the Court has aptly observed, 'is a word of many, too many, meanings.'" Kontrick, 540 U.S. at 454 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 90 (1998)).

Following <u>Kontrick</u>, the Court has attempted to bring
greater clarity to consideration of what restrictions are
properly classed as jurisdictional.[5]  The Court has also
directed: "Clarity would be facilitated if courts and litigants
used the label 'jurisdictional' not for claim-processing rules,
but only for prescriptions delineating the classes of cases
(subject-matter jurisdiction) and the persons (personal
jurisdiction) falling within a court's adjudicatory authority."
<u>Kontrick</u>, 540 U.S. at 455; <u>see also</u> <u>Eberhart</u>, 546 U.S. at 16;
<u>Scarborough</u>, 541 U.S. at 413-14.[6]

While further clarity is needed, "'[c]lassify[ing] time

---

[5] <u>See</u> <u>Gonzalez v. Thaler</u>, 132 S. Ct. 641 (2012); <u>Henderson
ex rel. Henderson v. Shinseki</u>, 131 S. Ct. 1197 (2011); <u>Union Pac.
R.R. v. Bhd. of Locomotive Eng'rs & Trainmen</u>, 130 S. Ct. 584
(2009); <u>Reed Elsevier, Inc. v. Muchnick</u>, 130 S. Ct. 1237 (2010);
<u>Bowles v. Russell</u>, 551 U.S. 205 (2007); <u>Arbaugh v. Y & H Corp.</u>,
546 U.S. 500 (2006); <u>Eberhart v. United States</u>, 546 U.S. 12
(2005); <u>Scarborough v. Principi</u>, 541 U.S. 401 (2004).

[6] As the Supreme Court has pointed out, proper delineation
of jurisdiction is not an academic exercise. <u>See</u> <u>Henderson</u>, 131
S. Ct. at 1202 ("Because the consequences that attach to the
jurisdictional label may be so drastic, we have tried in recent
cases to bring some discipline to the use of this term.").
"While a mandatory but nonjurisdictional limit is enforceable at
the insistence of a party claiming its benefit or by a judge
concerned with moving the docket," that limitation can be altered
through equitable means. <u>Bowles</u>, 551 U.S. at 216 (Souter, J.,
dissenting).  A jurisdictional limitation, however, cannot be
tolled. <u>Id.</u> at 214 (majority opinion).  Furthermore, a mandatory,
but non-jurisdictional, limitation may be waived if not timely
raised; however, a jurisdictional limitation may be raised at any
time, and the court is obligated to raise jurisdictional
limitations <i>sua sponte</i>. <u>Id.</u> at 216-17 (Souter, J., dissenting)
(citing <u>Arbaugh</u>, 546 U.S. at 514).

prescriptions, even rigid ones, under the heading "subject matter

jurisdiction"' can be confounding." Kontrick, 540 U.S. at 455

(quoting Carlisle v. United States, 517 U.S. 416, 434 (1996)).

To provide guidance in this determination, the Supreme Court, in

Arbaugh, applied a "readily administrable bright line" for

distinguishing between jurisdictional requisites and claim-

processing rules:

> If the legislature clearly states that a threshold
> limitation on a statute's scope shall count as
> jurisdictional, then courts and litigants will be duly
> instructed and will not be left to wrestle with the
> issue.  But when Congress does not rank a statutory
> limitation on coverage as jurisdictional, courts should
> treat the restriction as nonjurisdictional in
> character.

546 U.S. at 515-16 (footnote omitted) (citation omitted).[7]

When determining whether Congress has ranked a

statutory time limit as jurisdictional, courts are to consider

text, context, and historical treatment. Reed Elsevier, 130

S. Ct. at 1246 (citing Zipes v. Trans World Airlines, Inc., 455

U.S. 385, 393-95 (1982)).  Textual factors weighing in favor of

jurisdiction include explicit jurisdictional terms, implicit

references to a court's jurisdiction, and location in the same

provision as the court's grant of subject-matter jurisdiction.

See Henderson, 131 S. Ct. at 1204 (noting that 38 U.S.C.

---

[7] The Supreme Court has endorsed this standard in subsequent
cases. See Gonzalez, 132 S. Ct. at 648-49; Henderson, 131 S. Ct.
at 1203; Reed Elsevier, 130 S. Ct. at 1244.

§ 7266(a)[8] "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [Veterans Court]" (quoting Zipes, 455 U.S. at 394)); Id. at 1205 (noting that the timing requirements in 38 U.S.C. § 7266(a) are in a separate statutory provision from the grant of subject-matter jurisdiction). Context and historical treatment are often considered together. Reed Elsevier, 130 S. Ct. at 1248 ("[C]ontext, including this Court's interpretation of similar provisions in many years past, is relevant . . . ."). Therefore, context includes the background and framework of the statutory scheme, see Henderson, 131 S. Ct. at 1205 (noting that "what is most telling here are the singular characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims"), as well as prior treatment of a statutory provision by the Supreme Court, see Union Pac. R.R., 130 S. Ct. at 597 (holding the 28 U.S.C. § 2107(a) time limits for filing an appeal jurisdictional based on "a long line of [Supreme Court] decisions left undisturbed by Congress" (citing Bowles, 551 U.S. at 209–11)).

Following these instructions, and turning to the case

---

[8]    In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.

38 U.S.C. § 7266(a).

at hand, we initially note that "[f]iling deadlines . . . are

quintessential claim-processing rules." <u>Henderson</u>, 131 S. Ct.

at 1203.  Therefore, "[a filing deadline] falls outside the class

of limitations on subject-matter jurisdiction unless Congress

says otherwise." <u>Bowles</u>, 551 U.S. at 218 (Souter, J., dissenting)

(footnote omitted); <u>see also</u> <u>John R. Sand & Gravel Co. v. United</u>

<u>States</u>, 552 U.S. 130, 133 (2008).

        Looking first to the text of the statute for

Congressional intent we see that 19 U.S.C. § 1516a(a)(2) contains

no indication that it is jurisdictional in nature.  The statute

does not contain express jurisdictional language or language

implying that its timing requirements are jurisdictional.

Rather, § 1516a(a)(2) states that a summons and complaint are to

be filed in accordance with the rules of the Court of

International Trade, thereby indicating that Congress did not

intend for these timing provisions to be jurisdictional

requisites.  <u>Cf.</u> <u>Henderson</u>, 131 S. Ct. at 1204-05 (examining 38

U.S.C. § 7266(a)); <u>Reed Elsevier</u>, 130 S. Ct. at 1245 (examining

17 U.S.C. § 411(a)); <u>Arbaugh</u>, 546 U.S. at 515-16.  Furthermore,

the timing requirement in § 1516a(a)(2) is separate from the

Court's grant of subject-matter jurisdiction in 28 U.S.C.

§ 1581(c), also indicating that the requirement should not be

treated as jurisdictional. <u>See</u> <u>Henderson</u>, 131 S. Ct. at 1205;

<u>Reed Elsevier</u>, 130 S. Ct. at 1245-46.

        Commerce contends that 28 U.S.C. § 1581(c) incorporates

19 U.S.C. § 1516a when it references § 1516a in making the

jurisdictional grant and further argues that this renders

§ 1516a, including the timing requirements, jurisdictional.

Def.'s Br. in Resp. to the Questions Presented in the Court's

June 27, 2012 Order at 3–4, ECF No. 48.  This argument is not

persuasive.  Jurisdiction refers to the "classes of cases

(subject-matter jurisdiction) and the persons (personal

jurisdiction) falling within a court's adjudicatory authority."

Kontrick, 540 U.S. at 455.  Section 1581(c) states that "[t]he

Court of International Trade shall have exclusive jurisdiction of

any civil action commenced under [19 U.S.C. § 1516a]."  Section

1516a does not grant jurisdiction; rather, it sets out the

parameters of the jurisdiction granted in § 1581(c) by defining

which determinations may be challenged and the procedures for

such challenges under the authority established by § 1581(c).  In

other words, § 1581(c) defines the Court of International Trade's

jurisdiction as the class of cases commenced pursuant to § 1516a.

But, defining the scope of subject-matter jurisdiction by

reference to § 1516a does not render § 1516a jurisdictional.

Rather, § 1516a contains a quintessential example of claim-

processing rules that describe for plaintiffs the necessary — but

not jurisdictional — requirements for filing a challenge over

which the Court of International Trade will have jurisdiction

pursuant to § 1581(c).[9]

        While consideration of the text of 19 U.S.C.

§ 1516a(a)(2) weighs in favor of the conclusion that Congress

intended its timing requirements not to be jurisdictional,

---

        [9] The Court of International Trade was established by the
Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727.
Title II of the Customs Courts Act of 1980 is titled
"Jurisdiction of the Court of International Trade" and was
codified as 28 U.S.C. §§ 1581-85. 94 Stat. at 1728-30.  Title III
of the Customs Courts Act of 1980 is titled "Court of
International Trade Procedures" and was codified as 28 U.S.C.
§§ 1876, 2631-47. 94 Stat. 1730-39.  Included in "Court of
International Trade Procedures" is 28 U.S.C. § 2636, "Time for
commencement of action." 94 Stat. at 1734-35.  Section 2636(c),
which sets forth the timing requirements for commencing an action
pursuant to 19 U.S.C. § 1516a, was intended to substantially
restate the timing requirements already set forth in § 1516a. See
Bethlehem Steel Corp. v. United States, 742 F.2d 1405, 1412 (Fed.
Cir. 1984).  When the foregoing background is compared to the
Supreme Court's discussion of the Veteran's Judicial Review Act
("VJRA") in Henderson, it is clear that the statutory structure
of the Customs Courts Act does not indicate that the timing
requirements in 19 U.S.C. § 1516a are jurisdictional.  As the
Supreme Court noted in Henderson,

        [n]or does § 7266's placement within the VJRA provide
        such an indication [of jurisdictional attributes].
        Congress placed § 7266, numbered § 4066 in the enacting
        legislation, in a subchapter entitled "Procedure."
        That placement suggests that Congress regarded the 120-
        day limit as a claim-processing rule.  Congress elected
        not to place the 120-day limit in the VJRA subchapter
        entitled "Organization and Jurisdiction."

131 S. Ct. at 1205 (citations omitted).  As with the VJRA, the
Customs Courts Act of 1980 separated procedure and jurisdiction,
placing the timing requirements for filing under procedure.
Furthermore, while the jurisdictional provision, 28 U.S.C.
§ 1581(c), references 19 U.S.C. § 1516a to establish the class of
cases subject to review, the timing requirements laid out in
§ 1516a were substantially restated in the procedural provision,
28 U.S.C. § 2636(c). Bethlehem Steel, 742 F.2d at 1412.

consideration of the context of those requirements creates a more
complicated picture because it is partially analogous to both the
context that the Supreme Court found jurisdictional in <u>Bowles</u> and
that it found not jurisdictional in <u>Henderson</u>.  In <u>Bowles</u>, the
Supreme Court interpreted the filing requirements of 28 U.S.C.
§ 2107(a),[10] governing appeals from federal district courts to
federal circuit courts, to be jurisdictional because appeal
requirements in civil litigation between Article III courts had
been historically treated as jurisdictional. <u>Bowles</u>, 551 U.S. at
209-11.  By contrast, in <u>Henderson</u> the Supreme Court held that
the appeal requirements of 38 U.S.C. § 7266(a),[11] governing
appeals from the Board of Veterans' Appeals to the Court of
Appeals for Veterans Claims, were not jurisdictional. 131 S. Ct.
at 1204-06.  The Court based its holding in large part on the
context of the veterans' benefits review scheme.  <u>Id.</u> at 1205.
First, unlike the timing requirements held jurisdictional in
<u>Bowles</u>, § 7266(a) does not concern an appeal between Article III
courts; rather, it governs appeals from an administrative agency
to an Article I court. <u>Id.</u> at 1204-05.  Furthermore, the process
is informal, non-adversarial, and conducted in a context intended

---

[10] "Except as otherwise provided in this section, no appeal
shall bring any judgment, order or decree in an action, suit or
proceeding of a civil nature before a court of appeals for review
unless notice of appeal is filed, within thirty days after the
entry of such judgment, order or decree." 28 U.S.C. § 2107(a).

[11] For the text of 38 U.S.C. § 7266(a), see <u>supra</u> note 8.

to evidence a solicitude for veterans. Id. at 1205-06.

As an Article III court reviewing agency
determinations, this Court's review of Commerce action pursuant
to § 1516a falls between those two examples.  Like Henderson,
§ 1516a(a)(2) imposes requirements on the filing of a summons and
complaint for the review of determinations by an administrative
agency.  Unlike Henderson, the Court of International Trade is an
Article III court, and the process for determining an antidumping
duty is adversarial.  In that regard, § 1516a review is more akin
to ordinary civil litigation than the procedure for review of
Board of Veterans' Appeals' decisions.  Section 1516a(a)(2) does
not, however, impose requirements on reviews between Article III
courts; therefore, the Bowles context is not fully analogous to
the context at issue here.

Though the context of § 1516a(a)(2) cannot be fully
analogized to Bowles, the Bowles decision is additionally
relevant when considering the historical treatment of
§ 1516a(a)(2).  Historically, § 1516a(a)(2)'s timing requirements
have been treated as jurisdictional by the Court of Appeals and
this Court. See NEC Corp. v. United States, 806 F.2d 247, 248-49
(Fed. Cir. 1986) (affirming dismissal for lack of subject-matter
jurisdiction when a summons was untimely filed outside the thirty
day period due to insufficient postage); Georgetown Steel Corp.
v. United States, 801 F.2d 1308, 1311-13 (Fed. Cir. 1986)

(vacating and ordering dismissal, in part, for lack of subject-matter jurisdiction when a complaint was filed outside the thirty day time period for review); British Steel Corp. v. United States, 6 CIT 200, 202-04 (1983) (dismissing for lack of subject-matter jurisdiction when plaintiff commenced a challenge to an affirmative countervailing duty determination within thirty days after publication of the final determination but before publication of the countervailing duty order); Advanced Tech. & Materials Co. v. United States, 33 CIT __, Slip Op. 09-115, *4-7 (Oct. 15, 2009) (dismissing for lack of subject-matter jurisdiction a challenge to an affirmative antidumping determination filed prior to publication of the antidumping duty order).  The Court of Appeals has held § 1516a(a)(2)'s timing requirements jurisdictional on the grounds that the manner and method for filing a summons and complaint with the Court of International Trade constitute terms and conditions upon which the United States has waived its sovereign immunity. See NEC Corp., 806 F.2d at 248; Georgetown Steel, 801 F.2d at 1312.

Considered in light of the Supreme Court's holding in Bowles, and in light of our conclusion that the statutory context at issue in this case is not completely in line with that considered in Henderson, we conclude that we are obligated to follow the precedential opinions of the Court of Appeals in NEC Corp and Georgetown Steel and hold that the timing requirements

of 19 U.S.C. § 1516a(a)(2) are jurisdictional requisites.  NEC
Corp. and Georgetown Steel were both decided prior to the recent
developments in Supreme Court jurisprudence focused on delimiting
the boundaries of jurisdiction, and, as such, they were not based
on a consideration of the Arbaugh standard.  Nonetheless, we are
bound by the precedential opinions of the Court of Appeals, Nat'l
Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs,
260 F.3d 1365, 1373-74 (Fed. Cir. 2001), especially where, as
here, the historical treatment of the statute may be reason to
maintain its position as a jurisdictional requisite, see Bowles,
551 U.S. at 209-11.[12]  While it appears that the timing
requirements of 19 U.S.C. § 1516a(a)(2) should be reconsidered in
light of the Arbaugh standard and its progeny, such a
reconsideration is not the province of this court where the
Supreme Court has not extended further its own analysis.

---

[12] In her concurring opinion in Reed Elsevier, Justice
Ginsburg suggested that the Bowles decision rested solely on the
precedential effect of rulings from the Supreme Court, and that
historical rulings from lower courts may not carry the same
weight, particularly opinions that have not considered the issue
in light of the Arbaugh standard. Reed Elsevier, 130 S. Ct. at
1250-51 (Ginsburg, J., concurring).  However, we find that Bowles
provides reason to maintain the jurisdictional nature of a
statute historically held to be jurisdictional where, as here, we
are bound by the precedential opinions of the Court of Appeals.
Cf. Eberhart, 546 U.S. at 19-20 ("Convinced, therefore, that
Robinson and Smith governed this case, the Seventh Circuit felt
bound to apply them, even though it expressed grave doubts in
light of Kontrick.  This was a prudent course.  It neither forced
the issue by upsetting what the Court of Appeals took to be our
settled precedents, nor buried the issue by proceeding in a
summary fashion.").

As we noted in <u>Baroque Timber I</u>, we do not find the Complaint severable by the Court, *sua sponte*. 36 CIT at __, Slip Op 12-90 at *14-17.  However, CAHP may amend its Complaint to remove the untimely counts.[13]   Therefore, unless CAHP amends its Complaint consistent with <u>Baroque Timber I</u> by the date specified in the Conclusion to this opinion, the court will enter an order of final judgment dismissing the Complaint in its entirety for lack of jurisdiction.

## II.  Equitable Tolling

In <u>Baroque Timber I</u>, we also requested additional briefing from the parties on the question of equitable tolling in light of the Court of Appeals decision in <u>Former Employees of</u>

_____

[13] CAHP's challenge to the exclusion of Yuhua would have been timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and 19 U.S.C. § 1516a(a)(2)(B)(ii), if not filed alongside other challenges to the affirmative antidumping duty determination. <u>See Baroque Timber I</u>, 36 CIT at __, Slip Op. 12-90 at *13. Therefore, CAHP may amend its complaint, pursuant to USCIT R. 15(a)(2), to eliminate all counts of the Complaint that do not pertain to the exclusion of Yuhua and proceed with only that challenge.
In <u>Baroque Timber I</u>, the court suggested that CAHP could seek voluntary dismissal of the untimely portions of its Complaint, pursuant to USCIT R. 41(a)(2). 36 CIT at __, Slip Op. 12-90 at *17 n.7.  While the effect of dismissing the untimely portion of the Complaint is the same as amending the Complaint, the court recognizes the proper procedure in this case would be to amend the Complaint. <u>Cf. Nilssen v. Motorola, Inc.</u>, 203 F.3d 782, 784 (2000) ("Although we agree with Nilssen that an involuntary dismissal of a claim is technically not an amendment, that distinction is not controlling.  The true state of affairs is more critical than mere labels.  The fact that a voluntary dismissal of a claim under Rule 41(a) is properly labeled an amendment under Rule 15 is a technical, not a substantive, distinction." (footnote omitted)).

Sonoco Products Co. v. Chao, 372 F.3d 1291 (Fed. Cir. 2004)

(holding that 19 U.S.C. § 2636(d) is subject to equitable

tolling).[14] Baroque Timber I, 36 CIT at __, Slip Op. 12-90 at

*19-21.  Because we have determined that the court lacks

jurisdiction due to CAHP's untimely filing, we cannot reach the

question of equitable tolling. See Bowles, 551 U.S. at 214

(noting that courts cannot create equitable exceptions to

jurisdictional requirements).  While we will not decide whether

the time limits set out at 19 U.S.C. § 1516a(a)(2) would be

subject to equitable tolling, we note that the questions raised

above regarding the continuing validity of holding the

§ 1516a(a)(2) timing requirements to be jurisdictional requisites

could render the equitable tolling question equally imperative.

As with the issue of § 1516a(a)(2)'s jurisdictional

character, there is good reason to believe that, in light of

recent precedent, § 1516a(a)(2)[15] may be subject to equitable

---

[14] There is a dearth of clarity regarding the applicability
of equitable tolling to the various sections of 28 U.S.C. § 2636.
See Former Emps. of Sonoco, 372 F.3d at 1298 (holding that
§ 2636(d) is subject to equitable tolling); but see SKF USA Inc.
v. U.S. Customs & Border Protection, 556 F.3d 1337, 1348 (Fed.
Cir. 2009) (assuming, but not deciding, that § 2636(i) was
jurisdictional); Autoalliance Int'l, Inc. v. United States, 357
F.3d 1290, 1294 (Fed. Cir. 2004) (rejecting the applicability of
equitable tolling to § 2636(a)).

[15] Given that 28 U.S.C. § 2636(c) was intended to
substantially restate the timing requirements already set forth
in § 1516a, see Bethlehem Steel, 742 F.2d at 1412, it stands to
reason that if either statutory provision is subject to equitable
                                        (footnote continued)

tolling were it found, upon reconsideration, not to be a jurisdictional requisite. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990) (noting that "[o]nce Congress has made such a waiver [of sovereign immunity] . . . making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver"); see also Former Emps. of Sonoco, 372 F.3d at 1296–98 (holding 28 U.S.C. § 2636(d) subject to equitable tolling).  Furthermore, the facts of this case present a good case for equitable tolling. CAHP's summons was untimely because it was filed early — not late — due to CAHP's misinterpretation of a complicated statute. Moreover, there was no prior judicial guidance for interpreting the statute in light of the particular facts of CAHP's case. Together these facts suggest that CAHP filed its summons out of time in an attempt to preserve its rights, a basis upon which courts have found it appropriate to toll a statutory timing requirement. See Irwin, 498 U.S. at 96 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory time period . . . .").  Nor does it seem that CAHP's early filing would prejudice the interests of the

---

[15](footnote continued)
tolling the other provision would likewise be subject to equitable tolling.

Defendant.  However, such a decision is not for this court to

make today; it rests either with the Court of Appeals or with

this court at some later date.

III. <u>Certification for Interlocutory Appeal</u>

Consistent with the prior discussion, we believe that

the statutory issues discussed in this opinion are appropriate

for interlocutory appeal.  This Court may certify an issue for

interlocutory appeal to the Court of Appeals for the Federal

Circuit when "a controlling question of law is involved with

respect to which there is a substantial ground for difference of

opinion and that an immediate appeal . . . may materially advance

the ultimate determination of the litigation . . . ." 28 U.S.C.

§ 1292(d)(1).  This case meets the three part test set forth in

28 U.S.C. § 1292(d)(1): (1) it presents controlling questions of

law, namely whether the timing requirements of 19 U.S.C.

§ 1516a(a)(2) should be interpreted to render CAHP's Complaint

untimely and, if so, whether such timing requirements should be

interpreted as jurisdictional requisites or claim-processing

rules; (2) there is a substantial ground for difference of

opinion given the intervening Supreme Court precedent that has

not yet been considered in analyzing the nature of the

§ 1516a(a)(2) timing requirements; and (3) an immediate appeal

may materially advance the ultimate termination of the litigation

because an incorrect disposition of this issue would require

reversal of a final judgment based thereon. <u>Cf.</u> <u>USEC Inc. v.</u>
<u>United States</u>, 27 CIT 1925, 1928–29 (2003).  Therefore, we find,
pursuant to 28 U.S.C. § 1292(d)(1), that interlocutory appeal of
the court's interpretation of 19 U.S.C. § 1516a(a)(2) and its
decision that 19 U.S.C. § 1516a(a)(2) may be a jurisdictional
requisite is appropriate.

Upon request by the parties, the court will order
certification of the following issues for interlocutory appeal to
the Court of Appeals:

(1) Whether, pursuant to 19 U.S.C. § 1516a(a)(2), a
challenge to the exclusion of a company must be filed as a
negative part of an affirmative determination, i.e., within
thirty days after publication of the antidumping duty order, if
filed alongside other challenges to an affirmative determination.
<u>Baroque Timber I</u>, 36 CIT at __, Slip Op. 12-90 at *13-14.

(2) Whether the timing requirements of 19 U.S.C.
§ 1516a(a)(2) should continue to be considered jurisdictional
requisites in light of recent Supreme Court precedent delimiting
the boundaries of what is properly considered a jurisdictional
requirement.

(3) Whether, if the timing requirements of 19 U.S.C.
§ 1516a(a)(2) are not jurisdictional requisites, those timing
requirements are subject to equitable tolling.

Consol. Ct. No. 12-00007                                    Page 21

**CONCLUSION**

      Consistent with this opinion and the court's prior opinion in <u>Baroque Timber I</u>, the Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Jurisdiction is hereby granted. The parties are directed to consult on whether the court should certify the issues discussed above for interlocutory appeal and to inform the court of their decision by October 10, 2012.  If the parties do not seek interlocutory appeal, the court will enter final judgment dismissing this case unless CAHP files an amended complaint consistent with this opinion and the court's opinion in <u>Baroque Timber I</u> by October 31, 2012.

      It is **SO ORDERED**.


                                  /s/ Donald C. Pogue
                             Donald C. Pogue, Chief Judge

Dated: September 19, 2012
      New York, NY