Slip Op. 14 - 35

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) COMPANY, LIMITED, *et al.*, | Before: Donald C. Pogue, Chief Judge |
| Plaintiffs, | Consol. Court No. 12-00007[1] |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| COALITION FOR AMERICAN HARDWOOD PARITY, *et al.*, | |
| Defendant-Intervenors. | |

## OPINION

[remand redetermination affirmed in part and remanded in part]

Dated: March 31, 2014

Francis J. Sailer, Mark E. Pardo, Andrew T. Schutz, Kavita Mohan, and John M. Foote, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, of Washington, DC, for Baroque Timber

---

[1] This action was consolidated with court nos. 11-00452, 12-00013, and 12-00020. Order, May 31, 2012, ECF No. 37. The complaint filed by the Coalition for American Hardwood Parity in court no. 11-00452 was heard and decided separately in Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States, __ CIT __, 853 F. Supp. 2d 1290 (2012)("Baroque I"), and Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States, __ CIT __, 865 F. Supp. 2d 1300 (2012)("Baroque II"). The Coalition's complaint was ultimately dismissed. Baroque Timber Indus., 865 F. Supp. 2d at 1311.

Industries (Zhongshan) Co., Ltd.; Riverside Plywood Corp.;
Samling Elegant Living Trading (Labuan) Ltd.; Samling Global
USA, Inc.; Samling Riverside Co., Ltd.; and Suzhou Times
Flooring Co., Ltd.

        Gregory S. Menegaz, James K. Horgan, and John J.
Kenkel, deKieffer & Horgan, PLLC, Washington, DC, for Zhejiang
Layo Wood Industry Co., Ltd.; Changzhou Hawd Flooring Co., Ltd.;
Dunhua City Jisen Wood Industry Co., Ltd.; Dunhua City Dexin
Wood Industry Co., Ltd.; Dalian Huilong Wooden Products Co.,
Ltd.; Kunshan Yingyi-Nature Wood Industry Co., Ltd.; and Karly
Wood Product Ltd.

        Kristin H. Mowry, Daniel R. Wilson, Jeffrey S.
Grimson, Jill A. Cramer, Susan L. Brooks, Sarah M. Wyss, and
Rebecca M. Janz, Mowry & Grimson, PLLC, of Washington, DC, for
Fine Furniture (Shanghai) Ltd.; Great Wood (Tonghua) Ltd.; and
Fine Furniture Plantation (Shishou) Ltd.

        Kristen S. Smith and Mark R. Ludwikowski, Sandler,
Travis & Rosenberg, PA, of Washington, DC, for Lumber
Liquidators Services, LLC; Armstrong Wood Products (Kunshan)
Co., Ltd.; and Home Legend, LLC.

        Jeffrey S. Neeley, Michael S. Holton, and Stephen W.
Brophy, Barnes, Richardson & Colburn, Washington, DC, for
Zhejiang Yuhua Timber Co., Ltd.

        Alexander V. Sverdlov, Trial Attorney, Commercial
Litigation Branch, Civil Division, United States Department of
Justice, of Washington, DC, for the United States.  With him on
the brief were Stuart F. Delery, Principal Deputy Assistant
Attorney General, Jeanne E. Davidson, Director, and Claudia
Burke, Assistant Director.  Of counsel on the brief were Shana
A. Hofstetter and Melissa M. Brewer, Attorneys, International
Office of the Chief Counsel for Import Administration, U.S.
Department of Commerce, of Washington, DC.

        Jeffrey S. Levin, Levin Trade Law, P.C., of Bethesda,
MD, for the Coalition for American Hardwood Parity.

**Pogue, Chief Judge:**  This consolidated action returns to court,[2] following remand[3] and redetermination[4] of the final results of the antidumping duty investigation of multilayered wood flooring from the People's Republic of China ("PRC" or "China").[5]  Plaintiffs, cooperative non-investigated respondents who have established their entitlement to a separate antidumping duty rate, challenge the remand redetermination of that rate.[6]

---

[2] The court has jurisdiction pursuant to § 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2006) and 28 U.S.C. § 1581(c) (2006).  All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

[3] Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States, ___ C.I.T. ___, 925 F. Supp. 2d 1332 (2013)("Baroque III").

[4] Final Results of Redetermination Pursuant to Court Order, Nov. 14, 2013, ECF No. 132 ("Redetermination" or "Remand Results").

[5] Multilayered Wood Flooring from the People's Republic of China, 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011) (final determination of sales at less than fair value) ("Final Determination") and accompanying Issues & Decision Memorandum, A-570-970, POI Apr. 1, 2010 – Sept. 30, 2010 (Oct. 11, 2011) ("I & D Memo").

[6] The Respondents who are party to this case include: Baroque Timber Industries (Zhongshan) Co., Ltd.; Riverside Plywood Corp.; Samling Elegant Living Trading (Labuan), Ltd.; Samling Global USA, Inc.; Samling Riverside Co., Ltd.; Suzhou Times Flooring Co., Ltd.; Zhejiang Layo Wood Industry Co., Ltd.; Changzhou Hawd Flooring Co., Ltd.; Dunhua City Jisen Wood Industry Co., Ltd.; Dunhua City Dexin Wood Industry Co., Ltd.; Dalian Huilong Wooden Products Co., Ltd.; Kunshan Yingyi-Nature Wood Industry Co., Ltd.; Karly Wood Product Ltd.; and, Fine

(footnote continued)

Plaintiffs argue that the Department of Commerce's ("the Department" or "Commerce") redetermination is flawed because the Department's legal interpretations are not in accordance with the law and the Department's factual conclusions are not supported by a reasonable reading of the evidence.[7]

    Plaintiffs are, in part, correct.  Commerce has not articulated a rational connection between the record evidence and the rate applied to the separate rate companies, nor has Commerce explained how its determination bears a relationship to Plaintiffs' economic reality.  Accordingly, the court remands to Commerce for further consideration in accordance with this opinion.

### BACKGROUND

I.  Baroque III

    This dispute originates in a petition by the Coalition for American Hardwood Parity ("CAHP") alleging that imports of multilayered wood flooring from the PRC were being dumped in the

---

Furniture (Shanghai), Ltd. Respondents' Mem. of Law in Supp. of Mot. for J. on the Agency R. Pursuant to Rule 56.2, ECF No. 63 at 1 n.1.

    [7] See Comments in Opposition to Final Result of Redetermination Pursuant to Court Order, ECF No. 134; Comments of Fine Furniture (Shanghai) Limited on Department of Commerce November 14, 2013 Final Results of Redetermination Pursuant to Court Remand, ECF No. 136; Response to United States' Remand Redetermination of Separate Rate Appellants, ECF No. 138.

United States.  In response, Commerce initiated an antidumping

duty investigation for the period of April 1, 2010 through

September 30, 2010. Multilayered Wood Flooring from the People's

Republic of China, 75 Fed. Reg. 70,714 (Dep't Commerce Nov. 18,

2010) (initiation of antidumping duty investigation)

("Initiation Notice").  Commerce indicated that it would select

mandatory respondents based on quantity and value ("Q&V")

questionnaires. Id. at 70,717.  Commerce requested Q&V data from

190 companies and received timely responses from 80.

Multilayered Wood Flooring from the People's Republic of China,

76 Fed. Reg. 30,656, 30,657 (Dep't Commerce May 26, 2011)

(preliminary determination of sales at less than fair value)

("Preliminary Determination").  From these, Commerce selected

three mandatory respondents, the largest cooperating exporters

(by volume) of wood flooring, for the investigation: Zhejiang

Yuhua Timber Co., Ltd. ("Yuhua"), Zhejiang Layo Wood Industry

Co., Ltd. ("Layo"), and the Samling Group[8] ("Samling"). Id. at

30,658; see also 19 U.S.C. § 1677f-1(c)(2)(B).[9]  Those companies

---

[8] The Samling Group includes Baroque Timber Industries
(Zhongshan) Co., Ltd., Riverside Plywood Corp., Samling Elegant
Living Trading (Labuan) Ltd., Samling Global USA, Inc., Samling
Riverside Co., Ltd., and Suzhou Times Flooring Co., Ltd. Id. at
30,658, 30,660.

[9] Fine Furniture (Shanghai) Ltd. ("Fine Furniture"),
Shanghai Lizhong Wood Products Co., Ltd. ("Lizhong"), Dun Hua

(footnote continued)

that failed to respond to Commerce's Q&V questionnaire were

treated as part of the PRC-wide entity. Preliminary

Determination at 30,661.[10]

        In addition, because this was a non-market economy

("NME") investigation,[11] Commerce invited those exporters and

producers seeking a separate rate to submit a separate-rate

status application.[12]  Commerce received timely-filed separate-

rate applications from 74 companies, all of which demonstrated

_____

City Jisen Wood Co., Ltd., and Armstrong Wood Products also
requested to be treated as voluntary respondents. Preliminary
Determination at 30,658.  Fine Furniture and Lizhong each
submitted unsolicited responses to sections A, C, and D of
Commerce's original questionnaire. Id.  Commerce did not grant
these companies voluntary respondent status.  I&D Memo, cmt. 43
at 109 ("[P]ursuant to section 777A(c)(2) of the Act, the
Department exercised its discretion to limit its selection of
respondents to three producers/exporters.")  No party challenged
this decision.

    [10] Commerce found that the PRC-wide entity was non-
responsive and that use of facts available and an adverse
inference ("AFA") was appropriate. Preliminary Determination at
30,662.  Commerce's practice is to "select, as AFA, the higher
of the (a) Highest margin alleged in the petition, or (b) the
highest calculated rate of any respondent in the investigation."
Id.

    [11] See Preliminary Determination at 30,660; Final
Determination at 64,321.

    [12] With this application, Commerce "assigns separate rates
in NME cases only if respondents can demonstrate the absence of
both de jure and de facto governmental control over export
activities." Preliminary Determination at 30,660.  The criteria
used to determine the absence of de jure and de facto control
are specified in the Preliminary Determination at 30,661.

eligibility for separate rate status. <u>Final Determination</u> at
64,321.[13]

In its <u>Final Determination</u>, Commerce found that
multilayered wood flooring was being dumped in the United
States. <u>Id.</u> at 64,323-24.  Commerce found a *de minimis* dumping
margin for Yuhua and assigned margins of 3.98 percent and 2.63
percent to Layo and Samling, respectively. <u>Id.</u>  Commerce
assigned the AFA rate of 58.84 percent (the highest calculated
transaction-specific rate among mandatory respondents) to the
PRC-wide entity. <u>Id.</u> at 64,322.  Commerce then assigned the
separate rate respondents a rate of 3.31 percent. <u>Id.</u>  This rate
was the simple average of Layo and Samling's margins. <u>I&D Memo</u>,
cmt. 11 at 51.[14]

---

[13] Of these, twelve companies were wholly foreign-owned, and
therefore eligible for a separate rate. <u>Final Determination</u> at
64,321.  These twelve included separate rate respondents Fine
Furniture, Armstrong Wood Products (Kunshan) Co., Ltd., and
Kunshan Yingyi-Nature Wood Industry Co., Ltd., and mandatory
rate respondents Samling, Layo, and Yuhua. <u>Preliminary
Determination</u> at 30,661.  Sixty-two companies (some joint
ventures between Chinese and foreign companies, others wholly-
Chinese-owned) demonstrated eligibility for separate rate
status. <u>Id.</u>

[14] Commerce declined to use the weighted average indicated
in 19 U.S.C § 1673d(c)(5)(A) because doing so would have risked
disclosure of proprietary information from Samling and Layo. <u>Id.</u>
("Specifically, because there are only two respondents for which
a company-specific margin was calculated in this review, the
Department has calculated a simple average margin to ensure that

(footnote continued)

Plaintiffs sought judicial review of the Final Determination pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and 1516a(a)(2)(B)(i), and Commerce requested a voluntary remand. The court affirmed in part and remanded in part.  The court affirmed Commerce's rejection of Respondents' late filed surrogate financial statements.  The court remanded to Commerce for reconsideration the surrogate value ("SV") determinations for Layo's plywood input and Samling's HDF input; remanded for reconsideration Commerce's targeted dumping determination, in light of any changes to the surrogate value determinations and current standards; and remanded for further explanation or reconsideration the surrogate value determination for Layo's core veneer, Layo's HDF input, and Layo's brokerage and handling ("B&H") fees to account for the cost of a letter of credit. Baroque III, ___ C.I.T. at ___, 925 F. Supp. 2d at 1337; see also Remand Results at 1-2.

## II.  Commerce's Redetermination Pursuant to Remand

In its Redetermination, Commerce revised its findings as required by Baroque III.  Commerce (1) valued Layo's plywood input with an SV reflecting plywood thicknesses of 6.35 mm and

the total import quantity and value for each company is not inadvertently revealed.").

12.7 mm; (2) valued Samling's high-density fiberboard ("HDF")

with Philippine Harmonized Tariff Schedule ("HTS") category

4411.11; (3) valued Layo's core veneer input with 2009 data

reported by the Global Trade Atlas for Philippine HTS category

4408.9090.06; (4) provided further explanation for Commerce's

determination "to continue converting SV for [Layo's] HDF using

the average density of HDF used by [Layo]"; (5) adjusted Layo's

"B&H SV to remove letter of credit costs not incurred by

[Layo]"; and, (6) calculated Layo's and Samling's dumping

margins "using an average-to-average comparison method, rather

than the average-to-transaction comparison method." Remand

Results at 2.

        As a result of these changes, not only Yuhua, but also

Layo and Samling received dumping margins of zero. Id. at 26.[15]

_____

        [15] Plaintiffs do not contest Commerce's six findings or the
rates assigned to mandatory respondents. See Response to United
States' Remand Redetermination of Zhejiang Layo Wood Industry
Co., Ltd., ECF No. 137 at 1 ("As [Commerce] has recalculated a
de minimis final antidumping duty margin for Layo Wood, the
Court might consider this issue [Layo's critique of Commerce's
Redetermination] moot, particularly if the Court ultimately
determines to sustain [Commerce's] de minimis
redetermination."); Motion to Strike Section I(B) of Defendant-
Intervenor CAHP's Remand Reply Comments of Alternative Motion
for Leave to File Comments in Response to CAHP's Remand Reply
Comments, ECF No. 142. As no party contests these aspects of the
remand redeterminations, Commerce's findings regarding the SV
determinations for Layo's plywood input and Samling's HDF input;
Commerce's targeted dumping determinations; Commerce's finding

                                         (footnote continued)

The changes to Layo and Samling's SVs resulted in a new
calculated highest transaction-specific rate of 25.62 percent.
Commerce selected this rate as the revised AFA rate for the PRC-
wide entity. Id. at 27.  Because all the mandatory rates were
zero, Commerce chose to recalculate the separate rate under 19
U.S.C § 1673d(c)(5)(B)'s "any reasonable method provision,"
taking a simple average of the three mandatory rates of zero and
the AFA rate.  This resulted in a separate rate of 6.41 percent,
id., thereby increasing the separate respondents' rate while
each of the components of that rate decreased.

---

regarding the SV determination for Layo's core veneer, Layo's
HDF input, and Layo's brokerage and handling fees; and, the
resultant antidumping duty rates for Layo, Samling, and Yuhua
are AFFIRMED.

      Plaintiffs' motion to strike Defendant-Intervenor's
(CAHP's) arguments against these findings is therefore DENIED AS
MOOT. See Motion to Strike Section I(B) of Defendant-Intervenor
CAHP's Remand Reply Comments of Alternative Motion for Leave to
File Comments in Response to CAHP's Remand Reply Comments, ECF
No. 142; Motion of Zhejiang Layo Wood Industry Co., Ltd. to
Strike Portions of Coalition for Hardwood Parity's Reply to
Comments on Remand Redetermination, ECF No. 143; Defendant-
Intervenor's Response to Motion to Strike Portions of Reply to
Comments on Remand Redetermination, ECF No. 147.

## STANDARD OF REVIEW

The court will uphold Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)). It must be "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." N.L.R.B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939). In making its judgment, the court "looks to the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," Gallant Ocean (Thailand) Co., Ltd. v. U.S., 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted),[16] and determines "whether the evidence and reasonable inferences from the record support [the agency's]

---

[16] See also Universal Camera, 340 U.S. at 488 ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."); Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006) ("the substantial evidence standard requires review of the entire administrative record").

finding." Daewoo Elecs. Co. v. Int'l Union of Elec., Elec.,
Technical, Salaried & Mach. Workers, AFL-CIO, 6 F.3d 1511, 1520
(Fed. Cir. 1993) (internal quotation marks and citation
omitted).[17]   Commerce must provide a "rational connection between
the facts found and the choice made." Burlington Truck Lines,
Inc. v. United States, 371 U.S. 156, 168 (1962).   It must
"examine the record and articulate a satisfactory explanation
for its action." Yangzhou Bestpak Gifts & Crafts Co., Ltd. v.
United States, 716 F.3d 1370, 1378 (Fed. Cir. 2013).

       In essence, the substantial evidence standard asks
whether Commerce's determination was reasonable. Nippon Steel,
458 F.3d at 1351 (quoting SSIH Equipment SA v. United States
ITC, 718 F.2d 365, 381 (Fed.Cir.1983) (Nies, J. additional
comments)).[18]

---

[17] While the "possibility of drawing two inconsistent
conclusions from the evidence does not prevent an administrative
agency's finding from being supported by substantial evidence,"
Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966),
"[t]here must be at least enough evidence to allow reasonable
minds to differ." PAM, S.p.A. v. United States, 582 F.3d 1336,
1340 (Fed. Cir. 2009).

[18] Cf. Fuwei Films (Shandong) Co., Ltd. v. United States,
___ C.I.T. ___, 837 F. Supp. 2d 1347, 1350 (2012)
("Fundamentally, though, 'substantial evidence' is best
understood as a word formula connoting reasonableness review.").

**DISCUSSION**

I.   Commerce's Methodology

    A.   *The statutory provision allows Commerce to use "any*
        *reasonable method."*

      Otherwise lacking statutory guidance,[19] Commerce

follows 19 U.S.C § 1673d(c)(5) (method for determining the

estimated all-others rate) when calculating the dumping margin

for separate rate respondents.  Remand Results at 45.

      Section 1673d(c)(5)(A) provides the general rule,[20] but

when all of the weighted average dumping margins for

individually investigated exporters and producers are zero, *de*

*minimis*, or based entirely on facts available, an exception,

Section 1673d(c)(5)(B), applies and Commerce may use "any

reasonable method" to establish the separate rate.[21]

---

[19] Amanda Foods (Vietnam) Ltd. v. United States, ___ C.I.T.
___, 714 F. Supp. 2d 1282, 1289 (2010) ("Amanda Foods II")("No
statutory or regulatory provision directly addresses the
methodology to be employed when calculating a dumping margin"
for separate rate companies).

[20] The general rule provides that the separate rate is the
"estimated weighted average dumping margins established for
exporters and producers individually investigated, excluding any
zero and *de minimis* margins, and any margins [based entirely on
facts available]." 19 U.S.C. § 1673d(c)(5)(A).

[21] 19 U.S.C § 1673d(c)(5)(B) provides, in full:

    If the estimated weighted average dumping margins
    established for all exporters and producers
    individually investigated are zero or *de minimis*
    margins, or are [based on AFA], the administering

(footnote continued)

Here, because on remand the mandatory respondents all
had weight-averaged dumping margins of zero, Commerce calculated
the separate rate margin under the Section 1673d(c)(5)(B) "any
reasonable method" provision. Remand Results at 45.  Commerce
took a simple average of the three mandatory respondent zero
rates and the PRC-wide AFA rate. Id.

   B.   *It is not per se unreasonable for Commerce to use a*
        *simple average of zero and AFA rates to calculate the*
        *separate rate.*

Section 1673d(c)(5) does not say whether a simple
average of three zero percent mandatory respondent rates and the
PRC-wide AFA rate is reasonable.  Because the statute does not
"directly address the precise question at issue," the court is

---

authority may use any reasonable method to establish
the estimated all-others rate for exporters and
producers not individually investigated, including
averaging the estimated weighted average dumping
margins determined for the exporters and producers
individually investigated.

The Statement of Administrative Action (the "SAA," which is
recognized by Congress as an authoritative expression concerning
the interpretation and application of the Tariff Act of 1930
under 19 U.S.C. § 3512(d)), provides that the "expected method"
under the exception is to "weight-average the zero and *de
minimis* margins and margins determined pursuant to the facts
available," where "volume data is available," but "if this
method is not feasible, or if it results in an average that
would not be reasonably reflective of potential dumping margins
for non-investigated exporters or producers, Commerce may use
other reasonable methods." Uruguay Round Agreements Act, SAA,
HR. doc. No. 103-316 (1994), reprinted in 1994 U.S.C.C.A.N.
4040, 4201.

left to decide whether Commerce's interpretation is "a reasonable construction of the statute." <u>Bestpak</u>, 716 F.3d at 1377.[22]

Section 1673d(c)(5)(B)'s breadth and flexibility allow for a contextual application of the statute.[23]  It follows that there is "no legal error" inherent in using a simple average rather than a weighted average. <u>Bestpak</u>, 716 F.3d at 1378. And, as both "[Section] 1673d(c)(5)(B) and the SAA explicitly allow Commerce to factor both *de minimis* and AFA rates [of individually investigated exporters and producers] into the calculation methodology." <u>Id.</u>  Accordingly, as a method "derived from the relevant statutory language," <u>id.</u> at 1378, it is not *per se* unreasonable for Commerce to use a simple average of *de*

---

[22] Commerce's interpretation "need not be the only reasonable interpretation" nor the "most reasonable" nor that which "the court might have preferred." <u>Koyo Seiko Co., Ltd. v. United States</u>, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (citing <u>Zenith Radio Corp. v. United States</u>, 437 U.S. 443, 450 (1978)). It needs only to have been reasonable.

[23] <u>See United States v. Eurodif S. A.</u>, 555 U.S. 305, 317-18 (2009) ( "[I]t is well settled that in reading regulatory and taxation statutes, form should be disregarded for substance and the emphasis should be on economic reality." (internal quotation marks and citation omitted)).

*minimis* and AFA rates to calculate the separate rate antidumping

duty margin.[24]

II.  Commerce's Method is Not Supported by Substantial Evidence

    A.  *Commerce's chosen method must be reasonable as applied*
       *in order to be supported by substantial evidence.*

    While Commerce's chosen method may not be *per se*

unreasonable, it must still be reasonable as applied.[25]  In order

for an antidumping duty determination to be reasonable as

applied, Commerce must articulate a "rational connection between

the facts found and the choice made." Burlington Truck Lines*,*

371 U.S. at 168.  Commerce must "examine the record and

articulate a satisfactory explanation for its action." Bestpak,

---

[24] Cf. Bestpak, 716 F.3d at 1378 ("[T]his court finds that the methodology used by Commerce — although somewhat questionable — meets the statute's lenient standard of 'any reasonable method.'").

[25] See Thai Pineapple Canning Indus. Corp. v. United States, 273 F.3d 1077, 1085 (Fed. Cir. 2001) ("While various methodologies are permitted by the statute, it is possible for the application of a particular methodology to be unreasonable in a given case when a more accurate methodology is available and has been used in similar cases.").  Cf. Bestpak, 716 F.3d at 1378 ("Although Commerce may be permitted to use a simple average methodology to calculate the separate rate, the circumstances of this case renders a simple average of a *de minimis* and AFA China-wide rate unreasonable as applied."); MacLean-Fogg Co. v. United States, ___ C.I.T. ___, 885 F. Supp. 2d 1337, 1339 (2012) ("Commerce was permitted to use the AFA rate in calculating the all-others rate, provided it did so in a reasonable manner.").

716 F.3d at 1378.[26]  At the very least, it must "cogently explain

why it has exercised its discretion in a given manner." <u>Motor

Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.

Co.</u>, 463 U.S. 29, 48 (1983).[27]  A determination cannot be

considered reasonable if the agency has "entirely failed to

_____

[26] <u>See also</u> <u>In re Sang Su Lee</u>, 277 F.3d 1338, 1342 (Fed.
Cir. 2002) (The agency "must set forth its findings and the
grounds thereof, as supported by the agency record, and explain
its application of the law to the found facts.").

[27] This language comes from discussion of the arbitrary and
capricious standard. Under the arbitrary and capricious
standard, the court seeks to determine whether an agency's
decision was "based on a consideration of the relevant factors
and whether there has been a clear error of judgment." <u>Citizens
to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 416 (1971).
Like the substantial evidence standard, it requires that the
agency articulate a "rational connection between the facts found
and the choice made." <u>Bowman Transp., Inc. v. Arkansas-Best
Freight Sys., Inc.</u>, 419 U.S. 281, 285 (1974) (quoting <u>Burlington
Truck Lines</u>, 371 U.S. at 168). At the same time, arbitrary and
capricious as a standard "communicates a lesser review than
substantial evidence: suggesting a restrained critical mood or a
high tolerance for the risk of error." Charles Koch, 3 Admin. L.
& Prac. § 9:25 (3d ed.); <u>see</u> <u>also</u> <u>Abbott Labs. v. Gardner</u>, 387
U.S. 136, 143 (1967) <u>abrogated on other grounds by</u> <u>Califano v.
Sanders</u>, 430 U.S. 99 (1977) (the substantial evidence test
"afford[s] a considerably more generous judicial review than the
'arbitrary and capricious' test").

Accordingly, arbitrary and capricious review considers and
requires much of the same factual support and reasoning as
substantial evidence, but with a less searching review.  <u>Cf.</u> <u>In
re Sang Su Lee</u>, 277 F.3d at 1342.  It is therefore pertinent to
a substantial evidence review as the 'very least' an agency must
do for its determination to be rooted in fact and considered
reasonable.

consider an important aspect of the problem" before it. Id. at
43.

   When the problem is dumping, any method Commerce
employs must be "based on the best available information and
establish[] antidumping margins as accurately as possible."
Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v.
United States, 268 F.3d 1376, 1382 (Fed. Cir. 2001).[28]  While 19
U.S.C. § 1673d(c)(5)(B) allows Commerce to use "any reasonable
method," it must be in service of calculating a margin
"reasonably reflective of potential dumping margins for non-
investigated exporters or producers." 1994 U.S.C.C.A.N. 4040,
4201.[29]

_____

   [28] See also Bestpak, 716 F.3d at 1379 ("An overriding
purpose of Commerce's administration of antidumping laws is to
calculate dumping margins as accurately as possible."); Parkdale
Int'l v. United States, 475 F.3d 1375, 1380 (Fed. Cir. 2007);
SNR Roulements v. United States, 402 F.3d 1358, 1363
(Fed.Cir.2005)( "Antidumping laws intend to calculate
antidumping duties on a fair and equitable basis."); Rhone
Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir.
1990); Amanda Foods II, 714 F. Supp. 2d at 1292-93; U.S. Steel
Corp. v. United States, ___ C.I.T. ___, 712 F. Supp. 2d 1330,
1354-55 (2010); Yantai Oriental Juice Co. v. United States, 27
C.I.T. 477, 488 (2003).

   [29] Cf. Bestpak, 716 F.3d at 1380 ("[R]ate determinations for
nonmandatory, cooperating separate rate respondents must also
bear some relationship to their actual dumping margins.");
Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States,
701 F.3d 1367, 1379 (Fed. Cir. 2012) ("the requirement that the
method be 'reasonable' imposes a duty on Commerce to select a
method appropriate for the circumstances."); F.lli De Cecco Di

(footnote continued)

Because judicial review of an administrative decision must be made on the grounds relied on by the agency,[30] if Commerce has not articulated its reasoning sufficiently, the court will require "such additional explanation of the reasons for the agency decision as may prove necessary." Camp v. Pitts, 411 U.S. 138, 142-43 (1973).

B.  *Commerce failed to articulate a rational connection between facts found and choices made.*

In its Redetermination, Commerce did not consider whether use of an AFA rate, let alone use of the selected transaction-specific margin, was merited in its separate rates calculation. Nor did Commerce consider its responsibility to determine a separate rate that bears some relationship to respondents' actual rates. Rather, Commerce explains that its use of the AFA rate in the separate rate calculation is

---

Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("Congress could not have intended for Commerce's discretion to include the ability to select unreasonably high rates with no relationship to the respondent's actual dumping margin.").

[30] See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 94-95 (1943) ("an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained"); Bowman Transp., 419 U.S. at 285-86 (The court may not supply the reasoned basis, but "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.")(internal citations omitted).

reasonable because Commerce needed to account for the non-cooperating, PRC-wide companies in the investigation. <u>Remand Results</u> at 46.  Because some companies refused to respond to Commerce's requests for Q&V data, Commerce correctly notes that it lacks a complete data set.  Commerce suggests that because any of the non-cooperating companies could or "may have been selected" as a mandatory respondent, Commerce must account for them in some way in the separate rate calculation.  Commerce suggests that it cannot be sure that the mandatory respondents are reflective of the separate rate respondents. <u>Id.</u>[31]

       While Commerce may draw reasonable inferences from the failure of uncooperative respondents to provide evidence of the size, quantity, and value of their sales, doing so does not provide a rationale for the redetermination made here.  The mere presence of non-cooperating parties "fails to justify [Commerce's] choice of dumping margin for the cooperative uninvestigated respondents." <u>Amanda Foods (Vietnam) Ltd. v. United States</u>, 33 C.I.T. 1407, 647 F. Supp. 2d 1368, 1381 (2009) ("<u>Amanda Foods I</u>").

---

[31] <u>See also</u> Defendant's Response to Comments Upon the Remand Redetermination, ECF No. 141; Defendant-Intervenor's Reply Comments Regarding Department of Commerce Final Results of Redetermination Pursuant to Court Remand, ECF No. 140.

        Application of the AFA rate to non-cooperating parties

is a rebuttable presumption. See Rhone Poulenc, 899 F.2d at

1190-91.  A rebuttable presumption is not evidence. New York

Life Ins. Co. v. Gamer, 303 U.S. 161, 170 (1938).[32]  Even if it

were, the fact that the AFA rate applies to other companies is

not evidence of dumping on the part of the separate rate

companies. Amanda Foods I, 647 F. Supp. 2d at 1381.  Commerce

cannot use the AFA rate in calculating the separate rate for

cooperating parties without explanation. See Changzhou Wujin

Fine Chem. Factory, 701 F.3d at 1379.

        Moreover, Commerce failed to make any connection

between the transaction-specific margin of 25.62 percent and

separate rate respondents' pricing practices.  Commerce did not

provide a rationale for how its use of this margin results in a

reasonably accurate separate rate. While Commerce's concern

about incomplete Q&V data provides an explanation for its

decision to use a method other than the expected average of

individually investigated rates, that rationale has no

───────────────

        [32] See also Routen v. W., 142 F.3d 1434, 1439 (Fed. Cir.
1998) ("This court has never treated a presumption as any form
of evidence."); Amanda Foods II, 714 F. Supp. 2d at 1295 ("a
rebuttable presumption with respect to the margins for some
companies may not by itself serve as substantial evidence
supporting the accuracy of margins assigned to wholly unrelated
companies.").

relationship to the use of the 25.62 percent transaction-specific margin.  Why, for example, would it not have been appropriate to include a different or multiple transaction-specific margins in order to get a more accurate rate?  Specifically, why this margin?  How has Commerce done other than "cherry-picked [a] single data point" and gratuitously added it to the separate rate calculation?[33]  Why, on the factual record, is this a reasonable way for Commerce to have exercised its discretion?  The Redetermination contains no consideration of this aspect of the problem.

It is, of course, correct that, to calculate the separate rate in the Redetermination, Commerce has moved from (a modified application of) the general rule of 19 U.S.C § 1673d(c)(5)(A) to the exception in 19 U.S.C § 1673d(c)(5)(B), reflecting changes in the mandatory rates.  But Commerce has failed to consider its responsibility to determine rates that bear some relationship to respondents' actual rates, to their economic reality, rendering its chosen method unreasonable.

---

[33] See Changzhou Wujin Fine Chem. Factory, 701 F.3d at 1379 (finding Commerce had "cherry-picked the single data point" (a transaction-specific margin) for the AFA, that "would have the most adverse effect possible on cooperating voluntary respondents," when added to the separate rate calculation, "in a situation where there was no need or justification for deterrence").

Whether under the general rule or the exception, the mandatory

respondents are meant to be representative of the industry, and

therefore of the separate rate respondents. See 19 U.S.C. §

1677f-1(c)(2).[34]  Even under the exception, which allows for "any

reasonable method," the expected method is an average of the

"estimated weighted average dumping margins determined for the

exporters and producers individually investigated." 19 U.S.C. §

1673d(c)(5)(B).[35]  Commerce has exercised its discretion to not

---

[34] The statute provides that the mandatory respondents should be "a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection," or "exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined." See 19 U.S.C. §§ 1677f-1(c)(2)(A)-(B).  The corresponding explanation from the SAA provides that "Commerce will employ a sampling methodology designed to give representative results based on the facts known at the time the sampling method is designed.  This important qualification recognizes that Commerce may not have the type of information needed to select the *most* representative sample at the early stages of an investigation or review when it must decide on a sampling technique." 1994 U.S.C.C.A.N. 4040, 4200-01 (emphasis in original).

[35] The Amanda Foods court found that:

When a statutory provision specifically lists "averaging the [zero and *de minimis*] estimated weighted average dumping margins determined for the exporters and producers individually investigated" as the sole provided example of "a reasonable method to establish the estimated all-others rate" when all mandatory respondents' margins are zero or *de minimis,* 19 U.S.C. § 1673d(c)(5)(B), it is impermissible to interpret this provision as expressing a preference

(footnote continued)

use the expected method in favor of a method that takes into

account the absence of data from the PRC-wide entity.  While the

use of the AFA rate in the calculation of the separate rate may

be reasonable in some circumstances (so long as supported by

substantial evidence), here the seemingly gratuitous inclusion

of this transaction-specific rate in the separate rate

calculation, to increase the resultant rate, is incongruous.

Upon remand, all relevant rates — mandatory, transaction-

specific and AFA — decreased, suggesting a decreased likelihood

of dumping.[36]  But Commerce made the choice to use a method that

increased the separate rate both from the zero that would have

resulted from the expected method and from the 3.31 percent in

---

    against the use of such methodology in such
    situations.

Amanda Foods II, 714 F. Supp. 2d at 1291.

    [36] Cf. Yantai Oriental Juice, 27 C.I.T. at 487 ("Given these facts it appears that Commerce strained to reach its result. This is particularly puzzling given that in reaching its result Commerce abandoned the methodology used in the Final Determination (i.e., weight-averaging the estimated dumping margins of the Fully-Investigated Respondents) even though that method is specifically provided for in the statutory subsection it purported to follow."); Amanda Foods I, 647 F. Supp. 2d at 1381 ("Commerce, however, has not provided us with sufficient evidence on the record which could justify ignoring the evidence in favor of assigning a de minimis rate to Plaintiffs and which would support as reasonable the alternative rate chosen. Nor has Commerce articulated a clear justification for choosing the dumping margins that it assigned.").

Commerce's original determination.  Commerce did not explain why

it made this choice or how the result was in any way reasonably

reflective of Plaintiffs' economic reality.[37]

---

[37] Commerce would use Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States for the proposition that its method is reasonable because it is lawful to use a simple average of zero and AFA rates to calculate the separate rate. Remand Results at 47.  But while the Bestpak court held a simple average of de minimis and AFA rates was not per se unreasonable, it also found the method unreasonable in application. Bestpak, 716 F.3d at 1380.  Commerce faces the same problem here.

Commerce would distinguish the instant case from Bestpak on two grounds:  First, here the AFA rate is better grounded in economic reality. While the Bestpak AFA was based on a petition rate, the AFA rate here is the "highest transaction-specific margin calculated for a mandatory respondent," and therefore "reflects actual economic activity." Remand Result at 48. Second, the instant administrative record is fuller than the Bestpak record. Id. at 48-49.  Commerce would argue that these show that the separate rate here is grounded in economic reality.

But Commerce misunderstands Bestpak.  The Bestpak court did not require that the separate rate be grounded in economic reality generally, or to the factual record generally, but rather that it must bear some relationship to respondents' economic reality and factual situation. Bestpak, 716 F.3d at 1380 ("[R]ate determinations for nonmandatory, cooperating respondents must . . . bear some relationship to their actual dumping margins."). Commerce has not made this connection here. Commerce has not shown how the method chosen reflects or has some reasonable relationship to the economic reality of separate rate companies.  Commerce's method is therefore still unreasonable in application.

Commerce's use here of its reasoning in Lined Paper Products from India, Issues & Decision Mem., A-533-843, POR Sept. 1, 2010 – Aug. 31, 2011 (Apr. 9, 2013) (adopted in 78 Fed. Reg. 22,232 (Dep't of Commerce Apr. 15, 2013)) (final results of antidumping duty administrative review, 2010-11 cmt. 5 at 14,

(footnote continued)

While it is true that under substantial evidence the court "do[es] not make the determination," it "merely vet[s] the determination," Nippon Steel, 458 F.3d at 1352, "that the scope of such review is narrowly circumscribed is beside the point," Chenery, 318 US at 94, where, as here, Commerce's redetermination fails to articulate the required rational connection between the facts found and the rate chosen.  It therefore fails substantial evidence review.

## CONCLUSION

It is lawful for Commerce to draw reasonable inferences from uncooperative companies' failure to submit evidence of the size, quantity, and value of their sales, and to use a method reasonably derived from the relevant statutory language.  But substantial evidence asks a more specific question, and requires a more specific explanation from Commerce.[38]  At issue is whether Commerce's determination was

---

fails here for the same reason: those arguments do not touch on the separate rate respondents' economic reality.

[38] Cf. In re Sang Su Lee, 277 F.3d at 1345 ("The board cannot rely on conclusory statements when dealing with particular combinations of prior art and specific claims, but must set forth the rationale on which it relies.").

based on a reasonable reading of the record in context.  Without further explanation, the court cannot consider it so.[39]

Accordingly, this matter is affirmed in part and remanded in part to Commerce for further consideration in accordance with this opinion.  Commerce shall have until May 8, 2014 to complete and file its remand redetermination. Plaintiffs shall have until May 22, 2014 to file comments. Defendant and Defendant-Intervenors shall have until June 6, 3014 to file any reply.

**IT IS SO ORDERED.**

/s/ Donald C. Pogue
Donald C. Pogue, Chief Judge

Dated: March 31, 2014
       New York, NY

---

[39] Cf. Changzhou Wujin Fine Chem. Factory, 701 F.3d at 1379.